UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN LAUVE and
ROBERT DAVIS,

        Plaintiffs,                            Case No. 17-cv-12726
                                                          Hon. Mark A. Goldsmith
vs.

JANICE WINFREY, et al.

        Defendants.
_____/

**OPINION & ORDER**
**DENYING PLAINTIFFS' EMERGENCY MOTION FOR WRIT OF MANDAMUS AND**
**DECLARATORY JUDGMENT (Dkt. 5)**

On August 21, 2017, Plaintiffs John Lauve and Robert Davis ("Plaintiffs") filed an emergency motion, requesting a writ of mandamus and declaratory judgment on Counts VI and VII of their complaint. See Pls. Emer. Mot. at 1 (Dkt. 5). Oral argument on the emergency motion was heard on August 31, 2017. Following the hearing, Plaintiffs filed an emergency motion for leave to file a supplemental brief (Dkt. 14). Plaintiffs' motion was granted, and both parties submitted supplemental briefs.

For the reasons that follow, the Court denies Plaintiffs' emergency motion for mandamus and declaratory relief.[1]

---

[1] Defendants put forth several reasons why this Court should deny Plaintiffs' motion, arguing that Plaintiffs' claims should be dismissed as moot; that the Court should dismiss the federal claims because this is not an extraordinary election case meriting review by a federal court and Defendants had a rational basis for refusing to accept the deficient referendum filing; that the Court should decline to exercise supplemental jurisdiction over the state law claims; and that the state law claims should be dismissed under the doctrine of Bigger v. City of Pontiac, 210 N.W.2d 1 (Mich. 1973). See generally Defs. Br. in Opp. (Dkt. 10). As Plaintiffs' motion is denied on other grounds, the Court need not address these arguments.

# I. BACKGROUND

Plaintiffs Lauve and Davis are registered and qualified electors of the cities of Holly and Highland Park, Michigan, respectively. Compl. ¶¶ 12-13 (Dkt. 1). Plaintiffs circulated referendum petitions to repeal Detroit City Ordinance No. 19-17 (the "Ordinance") which, as Plaintiffs describe, "approved the amendments made to the Detroit Downtown Development Authority's tax increment financing and development plan for the new Little Caesars Arena." Pls. Br. in Supp. of Emer. Mot. at 4-5 (Dkt. 5). The Ordinance went into effect on July 5, 2017. Compl. ¶ 25.[2] Per Article 12 of the 2012 Detroit City Charter (the "Charter"), when an ordinance is given immediate effect, "[a] referendum petition must be filed with the City Clerk . . . within thirty (30) days after its effective date." Charter, § 12-103 (Pls. Emer. Mot., Ex. 3 (Dkt. 6-3)). The Charter also provides that referendum petitions "must be signed by voters of the City, not less in number than three percent (3%) of all votes case for the office of Mayor at the preceding regular city general election"; that is, 4,054 signatures. Id. § 12-102. Once a referendum on an ordinance has been invoked, "the effect of the ordinance shall be delayed or suspended until the City Clerk has made a final report that the referendum petitions are insufficient or, if the referendum petitions are sufficient, until the voters of the City have expressed their support for the ordinance in the referendum election." Id. § 12-106.

On August 4, 2017, Plaintiffs went to the office of the Detroit City Clerk, Defendant Janice Winfrey, and presented referendum petitions, which contained 362 signatures. Compl. ¶ 20. The City Clerk's office accepted the referendum petitions. Id. ¶ 21. The following day, Lauve received

---

[2] Plaintiffs state that the Ordinance went into effect on July 5, see Compl. ¶ 25; Pls. Br. at 9, while Defendants say that the effective date was July 6, Defs. Br. in Opp. at 1, 4 (Dkt. 10). Nonetheless, the parties agree that the deadline to turn in referendum petitions on the Ordinance was August 5, 2017. See Pls. Br. at 9; Defs. Br. at 4.

a letter from Defendant Daniel Baxter, the Director of Elections for the City of Detroit Election Commission, advising him that his petitions were invalid on their face, and, as a result, the City Clerk's office would not accept them. Id. ¶ 22. Plaintiffs returned to the City Clerk's office on August 18, 2017 with additional referendum petitions containing 7,927 signatures. Id. ¶ 33. Baxter then sent Lauve another letter stating that the additional referendum petitions were rejected as untimely. Id. ¶ 38.

Plaintiffs filed the instant action against Winfrey, Baxter, and the Detroit City Council (collectively, "Defendants") on August 20, 2017, requesting (i) a declaratory judgment that Winfrey and Baxter violated Plaintiffs' right to procedural due process by rejecting the referendum petitions; (ii) a declaratory judgment that Defendants violated Plaintiffs' right to procedural due process by failing to suspend the Ordinance; (iii) a declaratory judgment that Winfrey and Baxter violated Plaintiffs' rights to equal protection; (iv) attorney fees and costs; (v) compensatory, punitive, and nominal damages against Defendants; (vi) a writ of mandamus compelling Winfrey to canvass the timely-submitted referendum petitions; and (vii) a declaratory judgment that the Ordinance is suspended until Winfrey makes a final report regarding the sufficiency of Plaintiffs' referendum petitions. Compl. ¶¶ 2-8. The instant motion seeks relief with respect to Counts VI and VII only.

## II. ANALYSIS

### A. Plaintiffs' Motion is Procedurally Improper

Although Plaintiffs stress that it is "urgent" that the Court "grant expedited consideration" of their motion, Plaintiffs have not styled their request as one for a preliminary injunction or a temporary restraining order. Pls. Br. at 4. Doing so would have provided this Court with a framework for evaluating the motion. See Sandison v. Mich. High Sch. Athletic Ass'n, Inc., 64

F.3d 1026, 1030 (6th Cir. 1995) (decision whether to issue a preliminary injection turns on four traditional factors of irreparable harm, likelihood of success, balance of harms, and public interest). Plaintiffs did not address the traditional factors for equitable relief, demonstrating that Plaintiffs have not invoked the equitable process. Nor have Plaintiffs framed their emergency request as a motion for summary judgment, such that this Court could determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986).

Because Plaintiffs have not properly denominated their motion, the Court will not hazard a guess as to how it should be characterized. See, e.g., Syl Worhacz Ford, Inc. v. Ford Dealer Computer Servs., Inc., No. 06-50546, 2007 WL 2109564, at *2 (E. D. Mich. July 23, 2007) (denying motion for reconsideration where plaintiff argued that the court should have applied a different standard to its claim, because "Plaintiff did not cite this standard or the requisite elements of [the] claim in its seven page motion . . . It is not the duty of this Court to make arguments for a party."). The motion can be denied on this basis alone.

**B. Plaintiffs Have Not Shown Entitlement to Relief**

    **1. Writ of Mandamus**

Procedural defects aside, Plaintiffs have not shown that relief is warranted. A writ of mandamus is an extraordinary remedy that will only be issued where the party seeking the writ has a clear legal right to the performance of the specific duty sought; the defendant has the clear legal duty to perform the act requested; the act is ministerial; and no other remedy exists which might achieve the same result. Coalition for a Safer Detroit v. Detroit City Clerk, 820 N.W. 2d 208, 210 (Mich. Ct. App. 2012). The burden of establishing this clear legal duty lies with Plaintiffs. Id.

4

The parties agree that Article 12 of the Charter governs the dispute. In relevant part, the Charter provides:

> **Section 12-102. Petitions.**
> Initiative and referendum petitions must be signed by voters of the City, not less in number than three percent (3%) of all votes case for the office of Mayor at the preceding regular city general election. [ . . . ]
>
> **Section 12-103. Time of Filing.**
> [. . . ]
> A referendum petition must be filed with the City Clerk before the ordinance on which the referendum is sought, takes effect or, where the ordinance is given immediate effect, within thirty (30) days after its effective date.
>
> **Section 12-104. Filing and Canvass of Petitions.**
> Petitions to adopt or rescind an ordinance shall be filed with the Office of the City Clerk. The City Clerk shall verify the number of petitions that were filed and transmit petitions to the Department of Elections for a canvass of the petitions. Within ten (10) days of receipt, the Department of Elections shall canvass the signatures thereon to determine their sufficiency and make a report of the result to the City Council. [. . .]
>
> **Section 12-105. Insufficient Petitions.**
> If the Clerk's canvass discloses that the number of signatures on petitions for any initiative or referendum is insufficient, additional petitions may be filed within fifteen (15) days after the Clerk's determination. When this fifteen (15) day period has expired, the Clerk shall again canvass the signatures on the petitions filed to determine their sufficiency and make a report of the result.
>
> **Section 12-106. Suspension of Ordinance.**
> Where a referendum on an ordinance has been invoked under section 12-103, the effect of the ordinance shall be delayed or suspended until the City Clerk has made a final report that the referendum petitions are insufficient or, if the referendum petitions are sufficient, until the voters of the City have expressed their support for the ordinance in the referendum election.

Plaintiffs argue that the City Clerk, Winfrey, did not "transmit petitions to the Department of Elections for a canvass of the petitions," as is required by Section 12-104 of the Charter. Pls.

5

Br. at 11. Instead, Baxter rejected the petitions submitted on August 4 as "invalid on [their] face," id.; Pls. Mot., Ex. 2 (Dkt. 6-2), and rejected the petitions submitted on August 18 as untimely, Pls. Br. at 12; Pls. Mot., Ex. 5 (Dkt. 6-5). Plaintiffs contend that the August 18 petitions were not untimely, as Section 12-105 provides them with an additional fifteen days to file petitions if the number of signature on the petitions is insufficient. Pls. Br. at 11-12. Accordingly, Plaintiffs argue that Winfrey had a clear legal and ministerial duty to canvass all of Plaintiffs' petitions, id. at 15, and that Plaintiffs had a clear right to have their petitions canvassed, id. at 14.

Defendants respond that Sections 12-102 and 12-103 of the Charter require Plaintiffs to submit the minimum number of required signatures for referendum petitions within 30 days of the effective date of the ordinance. Defs. Br. at 5. Plaintiffs only submitted 362 signatures before the August 5 deadline, and thus this defective initial filing was properly rejected. Id. at 5-6. Section 12-105 of the Charter further states that "[i]f the Clerk's canvass discloses that the number of signatures on petitions for any . . . referendum is insufficient," the deadline is extended by 15 days. Charter, § 12-105 (emphasis added). Where, as here, the filing was defective on its face, canvassing was not necessary to determine that the petitions contained an insufficient number of signatures. Defs Br. at 5-6. The Plaintiffs, therefore, were not entitled to an additional fifteen days to secure the required number of signatures. Id. at 5.

In supplemental briefing, Plaintiffs argue that the language of the Charter does not support Defendants' view that an initial filing of referendum petition(s) must contain the minimum number of signatures. Pls. Supp. Br. at 5 (Dkt. 16). Section 12-103 of the Charter states that "[a] referendum petition must be filed with the City Clerk . . . within thirty (30) days after [the ordinance's] effective date." Id. (emphasis added). Plaintiffs argue that the indefinite "a" was purposefully used rather than "the," and Plaintiffs met this requirement. Id. at 5-6. There is no

6

suggestion, Plaintiffs say, in the language of the Charter than Plaintiffs were required to file a minimum of 4,054 signatures at the time of their initial filing. Id. at 6.

In response, Defendants argue that the Charter should be construed as a whole, rather than each section interpreted separately. Defs. Supp. Br. at 2-3 (Dkt. 18). By reading Section 12-103 in connection with Section 12-102, it is clear that a filing of at least 4,054 signatures is required within the thirty day period. Id. at 3. If Plaintiffs' position were accepted, Defendants contend, filing a referendum with zero signatures would both give the petitioner an additional fifteen days to collect signatures and immediately suspend the City ordinance under Section 12-106. Id. at 3-4.

The Court finds that Plaintiffs have not met their burden of showing that Defendant Winfrey had a clear legal duty to transmit their petitions to the Department of Elections to be canvassed. Here, Defendants' interpretation is a plausible reading of the Charter, and perhaps even the correct reading. It is not unreasonable for the City Clerk to interpret the Charter as not triggering the allowance of an additional fifteen days to collect signature when the party proffering petitions knows that they are insufficient from the outset. Regardless, the Charter does not define the circumstances under which the City Clerk must send the petitions to be canvassed with the "precision and certainty" necessary for a writ of mandamus. See City Council, City of Detroit v. Mayor of Detroit, No. 248724, 2004 WL 2256931, at *3 (Mich. Ct. App. Oct. 7, 2004) (citing State Bd. of Ed. v. Garden City Sch. Dist., 233 N.W. 2d 547, 550 n. 4 (Mich. Ct. App. 1975)) ("[D]efendants must have a clear legal duty to perform such act, which must be a ministerial act which is prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment."). Given that the Charter is, at best, ambiguous, the City

Clerk's judgment concerning its meaning is not unreasonable, as a matter of law. Thus, there was no clear legal duty violated.

Accordingly, Plaintiffs' request for a writ of mandamus compelling Winfrey to canvass the referendum petitions is denied.

### 2. Declaratory Relief

Plaintiffs have similarly failed to show that they are entitled to declaratory relief under Count VII. Plaintiffs seek a declaratory judgment declaring that the Ordinance is temporarily suspended pursuant to § 12-106 of the Charter. Compl. ¶¶ 107-113; Pls. Br. at 16.

The Charter provides that an ordinance will be suspended when a referendum has been invoked. Charter, § 12-106. However, as discussed above, Plaintiffs have not shown that they have properly invoked a referendum. Under Defendants' view of the Charter, a referendum is not properly invoked when the submitting party knows that the petitions filed before the deadline do not contain the minimum number of signatures required by § 12-102. Defs. Br. at 4-6. As the Court finds this to be a plausible interpretation of the Charter, the Court denies Plaintiffs' request for declaratory relief.

### III. CONCLUSION

Plaintiffs have not shown that they are entitled to relief on Counts VI and VII of their complaint. As the parties have not briefed the merits of these counts with the focus of whether they should be dismissed, the Court will not dismiss the claims at this stage. Nonetheless, Plaintiffs' Emergency Motion for a Writ of Mandamus and Declaratory Judgment (Dkt. 5) is denied.

SO ORDERED.

Dated: November 13, 2017          s/Mark A. Goldsmith
Detroit, Michigan          MARK A. GOLDSMITH
         United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 13, 2017.

s/Karri Sandusky
Case Manager
