UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN LAUVE and
ROBERT DAVIS,

        Plaintiffs,                                  Case No. 17-cv-12726
                                                          Hon. Mark A. Goldsmith
vs.

JANICE WINFREY, et al.

        Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Dkt. 29)**

This matter is now before the Court on Defendants Janice Winfrey, Daniel Baxter, and Detroit City Council's motion to dismiss Plaintiffs' first amended complaint (Dkt. 29). Plaintiffs John Lauve and Robert Davis have filed a response (Dkt. 33). No reply was received, and the time to file a reply has passed. Because oral argument will not aid the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, Defendants' motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiffs Lauve and Davis are registered and qualified electors of the cities of Holly and Highland Park, Michigan, respectively. Am. Compl. ¶¶ 15-16 (Dkt. 26). Plaintiffs circulated referendum petitions to repeal Detroit City Ordinance No. 19-17 (the "Ordinance"), which went into effect on July 5, 2017. Am. Compl. ¶ 28. Per Article 12 of the 2012 Detroit City Charter (the "Charter"), when an ordinance is given immediate effect, "[a] referendum petition must be filed

1

with the City Clerk . . . within thirty (30) days after its effective date." Charter, § 12-103.[1] The Charter also provides that referendum petitions "must be signed by voters of the City, not less in number than three percent (3%) of all votes case for the office of Mayor at the preceding regular city general election"; that is, 4,054 signatures. Id. § 12-102. The City Clerk "shall verify the number of petitions that were filed and transmit petitions to the Department of Elections for a canvass of the petitions." Id. § 12-104. "If the Clerk's canvass discloses that the number of signatures on petitions for any initiative or referendum is insufficient," additional petitions may be submitted within fifteen days of the City Clerk's determination. Id. § 12-105. Once a referendum on an ordinance has been invoked, "the effect of the ordinance shall be delayed or suspended until the City Clerk has made a final report that the referendum petitions are insufficient or, if the referendum petitions are sufficient, until the voters of the City have expressed their support for the ordinance in the referendum election." Id. § 12-106.

On August 4, 2017, Plaintiffs went to the office of the Detroit City Clerk, Defendant Winfrey, and presented referendum petitions, which contained 362 signatures. Am. Compl. ¶ 23. The City Clerk's office accepted the referendum petitions. Id. ¶ 24. The following day, Lauve received a letter from Defendant Baxter, the Director of Elections for the City of Detroit Election Commission, advising him that his "petitions with 362 purported signatures w[ere] invalid on [their] face," and, as a result, the City Clerk's office would not accept them. Id. ¶ 25. Plaintiffs returned to the City Clerk's office on August 18, 2017 with additional referendum petitions

---

[1] The Court may take judicial notice of the Charter as it is a matter of public record. See New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."). The Charter is available at http://www.detroitmi.gov/Portals/0/docs/Publications/COD%20Charter/2_29_2012_CharterDocument_2_1_WITHOUT_COMMENTARY_1.pdf.

2

containing 7,927 signatures. Id. ¶ 36. Baxter then sent Lauve another letter stating that the additional referendum petitions were rejected as untimely. Id. ¶ 41.

Plaintiffs filed the instant action against Defendants on August 20, 2017. Plaintiffs immediately filed a motion for a writ of mandamus, seeking a ruling on Counts VI and VII of the complaint (which correspond to Counts VII and VIII of the amended complaint), which the Court denied. See Lauve v. Winfrey, No. 17-12726, 2017 WL 5247897 (E.D. Mich. Nov. 13, 2017).

Plaintiffs later filed an amended complaint, which Defendants now seek to dismiss. The amended complaint requests (i) a declaratory judgment that Winfrey and Baxter violated Plaintiffs' right to procedural due process by rejecting the referendum petitions; (ii) a declaratory judgment that Defendants violated Plaintiffs' right to procedural due process by failing to suspend the Ordinance; (iii) a declaratory judgment that Winfrey and Baxter violated Plaintiffs' rights to equal protection; (iv) a declaratory judgment that § 12-101 of the Charter is unconstitutionally void-for-vagueness; (v) attorney fees and costs; (vi) compensatory, punitive, and nominal damages against Defendants; (vii) a writ of mandamus compelling Winfrey to canvass the timely-submitted referendum petitions; (viii) a declaratory judgment that the Ordinance is suspended until Winfrey makes a final report regarding the sufficiency of Plaintiffs' referendum petitions; and (ix) a declaratory judgment that the Ordinance is not an appropriation ordinance. Am. Compl. ¶¶ 3-11 (Dkt. 26).

## II. STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that

3

it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary . . . ."). Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Twombly, 550 U.S. at 556.

### III. ANALYSIS

#### A. Procedural Due Process

In Counts I and II, Plaintiffs allege that Winfrey and Baxter's rejection of the petitions, and failure to suspend the Ordinance, respectively, violate their procedural due process rights. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." Warren v. City of Athens, Ohio, 411 F.3d 697, 708 (6th Cir. 2005). As an initial matter, the Court must determine whether Plaintiffs have alleged any liberty interest of which they have been deprived.

"Liberty interests may arise from two sources – the Due Process Clause itself and the laws of the States." Tony L. v. Childers, 71 F.3d 1182, 1185 (6th Cir. 1995) (quotations omitted). "State-created liberty interests arise when a state places 'substantive limitations on official

discretion.'" Id. (quoting Olim v. Wakinekona, 461 U.S. 238, 249 (1983)). "A state may create such limitations by 'establishing substantive predicates to govern official decision-making . . . and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met.'" Jasinski v. Tyler, 729 F.3d 531, 541 (6th Cir. 2013) (quoting Tony L., 71 F.3d at 1185) (alterations in Jasinski). "The state statutes or regulations in question also must use 'explicitly mandatory language' requiring a particular outcome if the articulated substantive predicates are present." Tony L., 71 F.3d at 1185 (quoting Kentucky Dep't of Corrections v. Thompson, 490 U.S. 545, 463 (1989)). "Finally, the statute or regulation must require a particular substantive outcome." Id.

Plaintiffs allege that they have state-created liberty interests, pursuant to the Charter, in having their referendum petitions accepted and canvassed by the City Clerk and in having the Ordinance suspended. Am. Compl. ¶¶ 49, 72. They argue that the Charter uses the word "shall," which is explicitly mandatory language. Pl. Resp. at 11-12, PageID.401-402.

The Charter provides, in relevant part:

> **Section 12-102. Petitions.**
>
> Initiative and referendum petitions must be signed by voters of the City, not less in number than three percent (3%) of all votes case for the office of Mayor at the preceding regular city general election. [...]
>
> **Section 12-103. Time of Filing.**
>
> [...]
>
> A referendum petition must be filed with the City Clerk before the ordinance on which the referendum is sought, takes effect or, where the ordinance is given immediate effect, within thirty (30) days after its effective date.
>
> **Section 12-104. Filing and Canvass of Petitions.**

5

> Petitions to adopt or rescind an ordinance shall be filed with the Office of the City Clerk. The City Clerk shall verify the number of petitions that were filed and transmit petitions to the Department of Elections for a canvass of the petitions. Within ten (10) days of receipt, the Department of Elections shall canvass the signatures thereon to determine their sufficiency and make a report of the result to the City Council. [...]
>
> **Section 12-105. Insufficient Petitions.**
>
> If the Clerk's canvass discloses that the number of signatures on petitions for any initiative or referendum is insufficient, additional petitions may be filed within fifteen (15) days after the Clerk's determination. When this fifteen (15) day period has expired, the Clerk shall again canvass the signatures on the petitions filed to determine their sufficiency and make a report of the result.
>
> **Section 12-106. Suspension of Ordinance.**
>
> Where a referendum on an ordinance has been invoked under section 12-103, the effect of the ordinance shall be delayed or suspended until the City Clerk has made a final report that the referendum petitions are insufficient or, if the referendum petitions are sufficient, until the voters of the City have expressed their support for the ordinance in the referendum election.

As the Court explained in its previous opinion, when reading the Charter as a whole, a plausible interpretation is that the City Clerk need not have the petitions canvassed, triggering a fifteen-day extension of the filing period and an immediate suspension of the challenged ordinance, when it is clear from the outset that the proffered petitions contain an insufficient number of signatures. Lauve, 2017 WL 5247897, at *4. The Court concluded that "the Charter does not define the circumstances under which the City Clerk must send the petitions to be canvassed with the 'precision and certainty' necessary for a writ of mandamus." Id. Similarly, the Court now concludes that the Charter does not "establish[] substantive predicates to govern official decision-making . . . and . . . mandat[e] the outcome to be reached upon a finding that the relevant criteria have been met." Jasinski, 729 F.3d at 541 (quoting Tony L., 71 F.3d at 1185).

Accordingly, Plaintiffs have failed to state a procedural due process claim. Counts I and II are dismissed.

**B. Equal Protection**

Plaintiffs allege that their rights to equal protection under the Fourteenth Amendment were violated because Winfrey and Baxter treated their referendum petitions differently than other initiative and/or referendum petitions. Am. Compl. ¶ 85. They allege that Winfrey and Baxter have a personal animus and ill-will towards Davis, due to prior public criticisms made by Davis about Winfrey and Baxter. Id. ¶ 86. Specifically, they state that Winfrey told Davis that "she would do everything in her power to ensure that the referendum petitions he submitted would not be approved because she 'despised' and 'hated'" him. Id. ¶ 92.

According to Plaintiffs, another individual turned in petitions some three years ago in similar circumstances and was not mistreated. Tom Barrow allegedly turned in less than the required 4,054 signatures for his initiative petitions in 2015; these petitions were allegedly canvassed and, after a finding that they did not contain the minimum number of valid signatures, Barrow was informed that he had an additional fifteen days to submit additional signatures. Id. ¶¶ 93-96. Plaintiffs argue that the equal protection claim is premised on a "class of one" theory; that is, that Winfrey and Baxter treated Davis differently than all other similarly situated individuals because of personal animus and ill-will. Pl. Resp. at 20, PageID.410.

The Equal Protection Clause prohibits discrimination by the government that intentionally treats an individual differently than other similarly-situated individuals without any rational basis for this difference. TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio, 430 F.3d 783, 788 (6th Cir. 2005). The "basic requirements" for a class-of-one claim are that a plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Franks v. Rubitschun, 312 F. App'x 764, 766 (6th Cir. 2009) (quoting

7

Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." TriHealth, 430 F.3d at 788.

Defendants argue that a fundamental right is not involved and Plaintiffs do not claim to be members of a protected class, and as such, Defendants' conduct need only be rationally related to a government interest. Def. Mot. at 10 n.1, PageID.364. However, this ignores Plaintiffs' argument that Davis is a "class of one," and ignores Davis's allegations that Winfrey and Baxter harbor ill-will toward him. The Court finds that Plaintiffs have stated a claim for an equal protection violation, as they have alleged that Davis was intentionally treated differently than a similarly-situated comparator due to Defendants' animus.[2] Defendants' motion is denied as to Count III.

### C. Claims regarding Section § 12-101 of the Charter

Section 12-101 of the Charter provides:

> The voters of the city reserve the power to enact city ordinances, call [sic] the "initiative", and the power to nullify ordinances, enacted by the city, called the "referendum". However, these powers do not extend to the budget or any ordinance for the appropriation of money; the referendum power does not extend to any emergency ordinance.
>
> The initiative and the referendum may be invoked by petition as provided in this chapter.

---

[2] When Plaintiffs filed their emergency motion for a writ of mandamus and declaratory judgment with respect to Counts VI and VII of the complaint (Dkt. 5), Defendants put forth evidence distinguishing Mr. Barrow from Plaintiffs and explaining why he was not a similarly-situated comparator. See Defs. Resp. to Emer. Mot. at 16, PageID.100 (Dkt. 10). However, Defendants do not repeat those arguments in the instant motion, nor do they request that this Court consider matters outside the pleadings. The Court's review is limited to the complaint, and on this basis, the Court finds that Plaintiffs have stated a claim for violation of their rights to equal protection.

Charter, § 12-101.

Plaintiffs allege that Baxter sent Lauve a letter dated August 4, 2017, which advised him that his filing of petitions with 362 signatures was "null and void under the City Charter." Am. Compl. ¶ 106. Plaintiffs claim that the reason Baxter so advised him was due to Baxter's belief that the Ordinance was an ordinance for the appropriation of money, and therefore not subject to referendum. Id. ¶ 107. In Count IV, Plaintiffs allege that § 12-101 of the Charter is unconstitutionally void for vagueness, and seek a judgment from this Court so declaring. Am. Compl. ¶ 113. In Count IX, Plaintiffs seek "prospective declaratory relief" in the form of a declaration from this Court that the Ordinance is not an appropriation ordinance and is, therefore, subject to repeal by initiative. Am. Compl. ¶¶ 137, 147. Plaintiffs state that they intend to begin circulating initiative petitions to repeal the Ordinance, and fear that Baxter and Winfrey will reject the petitions on the grounds that the Ordinance is an appropriation ordinance. Am. Compl. ¶¶ 143-146.

Defendants respond that the only reason offered in Baxter's letter for rejecting the filing was that the petitions contained an insufficient number of signatures. Def. Mot. at 11-12, PageID.365-366. Therefore, they argue that Plaintiffs do not allege any harm that will result if this Court does not issue a declaratory judgment, and state that there is no actual case or controversy present. Id. at 14, PageID.368.

"The core component of the requirement that a litigant have standing to invoke the authority of a federal court is an essential and unchanging part of the case-or-controversy requirement of Article III." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) (quotations omitted). A plaintiff must satisfy three elements to have standing to pursue a claim:

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest that is (a) concrete and particularized,

9

> and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

600 Marshall Entertainment Concepts, LLC v. City of Memphis, 705 F.3d 576, 585 (6th Cir. 2013) (quoting United States v. Hays, 515 U.S. 737, 742-743 (1995)).

As to Count IV, Defendants argue that Plaintiffs do not "identify any harm that will befall them if this Court does not issue a declaratory judgment on whether the cited Charter provision is 'void for vagueness.'" Def. Mot. at 12, PageID.366. The Court agrees, as even if it were to declare § 12-101 of the Charter void, this would not provide Plaintiffs with any relief. Their referendum petitions would still be rejected due to having an insufficient number of signatures or being submitted after the deadline. The third element for standing is not met because Plaintiffs have not pled an injury that is likely to be redressed by a favorable decision.

Nor is the second element satisfied. Plaintiffs have failed to plausibly allege a causal connection between their alleged injury, rejection of their petitions, and the conduct complained of, the allegedly unconstitutional Charter provision. Although Plaintiffs assert that the reason Winfrey and Baxter declared the referendum petitions "null and void" under the Charter was due to their "belief that Ordinance No. 19-17 was not subject to referendum because it was an ordinance that made an appropriation," Am. Compl. ¶ 107, there is no indication of this in the letter Plaintiffs received from Baxter. Rather, the August 4, 2017 letter quotes § 12-10<u>2</u> – the Charter provision regarding the <u>number</u> of signatures required – before stating that "the filing is null and void under the City Charter." 8/4/2017 Letter, Ex. B to Compl., at PageID.65 (Dkt. 6-2).[3]

---

[3] Although Plaintiffs' Amended Complaint refers to attached exhibits, Plaintiffs failed to actually attach any exhibits to their filing. Nonetheless, Plaintiffs refer to the "August 4, 2017 Letter from Defendant Baxter attached as Exhibit D," Am. Compl. at 6, PageID.313, which corresponds to the letter attached as Exhibit B (and docketed as such) to Plaintiffs' original complaint.

10

While Defendants later raised § 12-101 as a potential justification for rejection of the petitions, see Am. Compl. ¶ 111; Defs. Resp. to Emer. Mot. at 19, PageID.103 (Dkt. 10), Plaintiffs do not plausibly allege that the rejection of the petitions on August 4, 2017 was in any way connected to § 12-101 of the Charter. As such, they do not have standing to bring Count IV.

As to Count IX, Defendants argue that Plaintiffs have no standing to seek declaratory relief because they have not shown any meaningful possibility of future harm. Def. Mot. at 14, PageID.368. Although a declaratory judgment generally is sought before a completed injury-in-fact has occurred, a plaintiff nonetheless "must demonstrate actual present harm or a significant possibility of future harm to justify pre-enforcement relief." Peoples Rights Org., Inc. v. City of Columbus, 152 F.3d 522, 527 (6th Cir. 1998). Plaintiffs have failed to do so here. They state only that they "desire and intend" to circulate initiative petitions, Am. Compl. ¶ 143, but not that they have actually done so.[4] Even if Plaintiffs do circulate initiative petitions, there is no guarantee that they will collect the minimum number of signatures in order to place the issue on the ballot. Nor is there any guarantee that Defendants would refuse to accept such petitions, or rely upon § 12-101 of the Charter to do so.[5] As such, the Court concludes that Plaintiffs have not shown that there is a "significant possibility of future harm" such that they have standing to pursue Count IX.

---

[4] The Amended Complaint, filed on December 9, 2017, notes that Plaintiffs plan to "immediately" begin circulating initiative petitions on December 18, 2017, id. ¶¶ 143-144 (emphasis in original), but Plaintiffs' response to the motion to dismiss – filed January 15, 2018 – also says that "Plaintiffs intend to begin circulating initiative petitions to repeal Ordinance No. 19-17 on Monday, December 18, 2017." Pl. Resp. at 24-25, PageID.414-415. This suggests that there was no meaningful update to Plaintiffs' efforts to circulate petitions between December 2017 and January 2018, despite Plaintiffs' claims that they would "immediately" begin circulating petitions.

[5] Plaintiffs allege that Defendants previously argued that the referendum petitions were null and void because the Ordinance was not subject to referendum because it was an appropriation ordinance. Am. Compl. ¶ 111. However, they do not allege that Baxter and Winfrey ever explicitly cited this Charter provision in either instance that they rejected Plaintiffs' petitions.

Counts IV and IX are dismissed.

## D. State Law Claims

In Counts VII and VIII, Plaintiffs seek a writ of mandamus compelling Winfrey to canvass the timely-submitted referendum petitions, and a declaratory judgment declaring the Ordinance temporarily suspended pursuant to § 12-106 of the Charter. Although Defendants moved to dismiss Counts VII and VIII, Plaintiffs have not responded to Defendants' arguments. Nonetheless, for the reasons set forth more fully in this Court's previous order, Lauve v. Winfrey, No. 17-12726, 2017 WL 5247897 (E.D. Mich. Nov. 13, 2017), Plaintiffs have failed to state a claim for relief on either count.

A writ of mandamus is an extraordinary remedy that will only be issued where the party seeking the writ has a clear legal right to the performance of the specific duty sought; the defendant has the clear legal duty to perform the act requested; the act is ministerial; and no other remedy exists which might achieve the same result. Coalition for a Safer Detroit v. Detroit City Clerk, 820 N.W.2d 208, 210 (Mich. Ct. App. 2012). Plaintiffs have not plausibly alleged that Winfrey had a clear legal duty to transmit their petitions to the Department of Elections to be canvassed:

> Here, Defendants' interpretation is a plausible reading of the Charter, and perhaps even the correct reading. It is not unreasonable for the City Clerk to interpret the Charter as not triggering the allowance of an additional fifteen days to collect signature when the party proffering petitions knows that they are insufficient from the outset. Regardless, the Charter does not define the circumstances under which the City Clerk must send the petitions to be canvassed with the "precision and certainty" necessary for a writ of mandamus. See City Council, City of Detroit v. Mayor of Detroit, No. 248724, 2004 WL 2256931, at *3 (Mich. Ct. App. Oct. 7, 2004) (citing State Bd. of Ed. v. Garden City Sch. Dist., 233 N.W. 2d 547, 550 n. 4 (Mich. Ct. App. 1975)) ("[D]efendants must have a clear legal duty to perform such act, which must be a ministerial act which is prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment."). Given that the Charter is, at best, ambiguous, the City Clerk's judgment concerning its meaning is not unreasonable, as a matter of law. Thus,

there was no clear legal duty violated.

Lauve, 2017 WL 5247897, at *4.

Nor are Plaintiffs entitled to declaratory relief that the Ordinance is suspended. Plaintiffs base their entitlement to such relief on allegations that Winfrey has violated the Charter, and the Court concludes that there is no plausible claim that Winfrey has done so. Plaintiffs are not entitled to a declaratory judgment to that effect.

Counts VII and VIII are dismissed.

## IV. CONCLUSION

For the reasons provided, Defendants' motion to dismiss (Dkt. 29) is granted in part and denied in part.[6] Counts I, II, IV, VII, VIII, and IX are dismissed; Counts III, V, and VI remain.[7]

SO ORDERED.

Dated: July 10, 2018       s/Mark A. Goldsmith
  Detroit, Michigan      MARK A. GOLDSMITH
     United States District Judge

**CERTIFICATE OF SERVICE**
The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2018.

     s/Karri Sandusky
     Case Manager

---

[6] Defendants also filed two prior motions to dismiss (Dkts. 22, 24), which were superseded by the instant motion to dismiss. These prior motions are therefore denied as moot.

[7] Counts V and VI do not state causes of action. Count V is a request for attorney fees and costs, and Count VI seeks compensatory, punitive, and nominal damages. Although Defendants state that all of Plaintiffs' "Constitutional claims," which Defendants characterize as Counts I-III, V, and VI, should be dismissed, they do not put forth separate arguments as to why Plaintiffs are not entitled to fees, costs, and/or damages. As such, these counts will remain in the case unless and until a properly supported motion is directed to them.